**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STATE OF NEW YORK,

        Plaintiff,

           v.

KRISTI NOEM, *et al*.,

        Defendants.

Case No. 25 Civ. 8106 (LAK)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

JAY CLAYTON
United States Attorney
Southern District of New York
86 Chambers St., 3rd Floor
New York, New York 10007

*Attorney for Defendants*

JEFFREY OESTERICHER
Assistant United States Attorney
   *Of Counsel*

# TABLE OF CONTENTS

**PAGE(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

   I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 2

   II.  LEGAL STANDARDS ................................................................................................. 4

ARGUMENT ....................................................................................................................... 4

   I.  PLAINTIFF'S  MOTION IS MOOT ............................................................................. 4

   II.  PLAINTIFF'S MOTION FAILS ON THE MERITS ..................................................... 10

      A.  *Plaintiff Cannot Show a Likelihood of Success on the Merits* .................................... 10

      B.  *Plaintiff Does Not Face Irreparable Harm* ................................................................. 12

      C.  *The Balance of Equities and the Public Interest Favors the Government* ................. 12

CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(s)**

*Adeleke v. United States*,
    355 F.3d 144 (2d Cir. 20024) .......................................................................... 7

*Ass'n of Regional Councils v. Costle*,
    564 F.2d 583 (D.C. Cir. 1977) ...................................................................... 10

*City of Houston, Tex. v. Dep't of Hous. & Urb. Dev.*,
    24 F.3d 1421 (D.C. Cir. 1994) .............................................................. *passim*

*Cnty. of Suffolk, N.Y. v. Sebelius*,
    605 F.3d 135 (2d Cir. 2010) ................................................................. *passim*

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
    38 F.4th 1099 (D.C. Cir. 2022) ...................................................................... 8

*DiMartile v. Hochul*,
    80 F.4th 443 (2d Cir. 2023) ......................................................................... 10

*Doyle v. Midland Credit Mgmt., Inc.*,
    722 F.3d 78 (2d Cir. 2013) ............................................................................ 5

*Faiveley Transp. Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009) ........................................................................ 12

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ...................................................................................... 7

*Grand River Enter. Six Nations, Ltd. v. Pryor*,
    481 F.3d 60 (2d Cir. 2007) ............................................................................ 4

*Granite State Outdoor Advert., Inc. v. Town of Orange, Connecticut*,
    303 F.3d 450 (2d Cir. 2002) ........................................................................ 10

*Int'l Bus. Machines Corp. v. De Freitas Lima*,
    No. 7:20-CV-04573 (PMH), 2020 WL 5261336 (S.D.N.Y. Sept. 3, 2020) ..................... 12

*Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*,
    955 F.3d 314 (2d Cir. 2020) .......................................................................... 5

*Kakar v. United States Citizenship & Immigr. Servs.*,
    29 F.4th 129 (2d Cir. 2022) ......................................................................... 11

*Karpova v. Snow*,
    497 F.3d 262 (2d Cir. 2007) ........................................................................ 11

*Knox v. Serv. Emps. Int'l Union, Local*,
    1000, 567 U.S. 298, 132 S. Ct. 2277 (2012) ................................................ 5

*Manners v. U.S. Gov't Sec'y of Def.*,
    242 F. App'x 723 (2d Cir. 2007) .................................................................. 8

*Mazurek v. Armstrong*,
    520 U.S. 968 (1997) .................................................................................... 4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29, 103 S. Ct. 2856 (1983) .......................................................... 11

*New York v. Nat'l Sci. Found.*,
    No. 25 CIV. 4452 (JPC), 2025 WL 2180478 (S.D.N.Y. Aug. 1, 2025) ............ 8

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................... 4

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S., 101 S. Ct. 1531 (1981) ................................................................ 12

*Rodriguez v. Carson*,
    401 F. Supp. 3d 465 (S.D.N.Y. 2019) ..................................................... 8, 9

*Rodriguez v. DeBuono*,
    175 F.3d 227 (2d Cir.1999) ........................................................................ 12

*Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*,
    260 F.3d 114 (2d Cir. 2001) ....................................................................... 5

*Sierra Club v. EPA*,
    353 F.3d 976 (D.C. Cir. 2004) .................................................................... 11

*State v. Bessent*,
    149 F.4th 127 (2d Cir. 2025) ...................................................................... 11

*State v. Dep't of Just.*,
    951 F.3d 84 (2d Cir. 2020) .......................................................................... 12

*Students for Fair Admissions v. U.S. Mil. Acad. at West Point*,
    709 F. Supp. 3d 118 (S.D.N.Y. 2024) ........................................................ 4

*Trump v. CASA, Inc.*,
    606 U.S. 831, 145 S. Ct. 2540 (2025) ............................................................. 13

*United States Parole Comm'n v. Geraghty*,
    445 U.S. 388 (1980) .......................................................................................... 5

*Westchester v. U.S. Dep't of Hous. and Urban Dev.*,
    778 F.3d 412 (2d Cir. 2015) ............................................................................. 8

*Winter v. NRDC*,
    555 U.S. 7 (2008) .............................................................................................. 4

**Statutes**

5 U.S.C. § 706(2)(A) ...................................................................................... 3, 11

6 U.S.C. § 1135 .................................................................................................. 2

31 U.S.C. § 1501(a)(6) ...................................................................................... 7

31 U.S.C. § 1502(b) .......................................................................................... 9

Pub. L. No. 110-53 ............................................................................................ 2

Pub. L. No. 119-4 .............................................................................................. 2

Defendants Kristi Noem, in her official capacity as Secretary of Homeland Security, the United States Department of Homeland Security ("DHS"), David Richardson in his official capacity as Senior Official Performing the Duties of the Administrator of the Federal Emergency Management Agency ("FEMA"), and FEMA (collectively, the "Government") by their attorney Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to the emergency motion for injunctive relief filed by the State of New York ("Plaintiff").  ECF. No. 2.

## PRELIMINARY STATEMENT

Plaintiff brings this action under the Administrative Procedure Act (the "APA") challenging FEMA's award of grants to eligible transit systems around the country pursuant to the Transit Security Grant Program ("TSGP").  By this motion, Plaintiff asks this Court to de-obligate $33 million in funds FEMA has already properly awarded to eligible recipients, enjoin the Government from disbursing these obligated funds, and to suspend the statutory lapse of TSGP funds.  However, Plaintiff cannot obtain the relief it seeks because Plaintiff's claims are moot.  Specifically, as Plaintiff concedes, the funds at issue lapsed on September 30, 2025, and have already been fully obligated to other recipients.  As a result, Plaintiff's claims are moot, and this Court lacks subject matter jurisdiction to consider them.  Even if plaintiff could establish jurisdiction, the court should still deny the motion for a preliminary injunction because Plaintiff cannot establish entitlement to such a drastic and extraordinary remedy.  In particular, Plaintiff fails to show that the agency's funding decision-making was arbitrary and capricious, that failing to receive funds to which it was not entitled would cause Plaintiff to suffer irreparable harm, or that the balance of interests mandates an injunction. For these reasons, as detailed further below, this Court should deny Plaintiff's motion for injunctive relief.

## BACKGROUND

### I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Transit Security Grant Program provides eligible public transportation systems with funding to combat terrorism and fortify transportation infrastructure.  The TSGP is authorized by Section 1406 of the Implementing Recommendations of the 9/11 Commission Act of 2007 (Pub. L. No. 110-53), codified at 6 U.S.C. § 1135, and the Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, § 1101-2.  Section 1135(c)(1) grants DHS the authority to establish requirements for grant recipients and priorities for which grant funds may be used.

For Fiscal Year ("FY") 2025, Congress appropriated $83,700,000 to FEMA for the TSGP pursuant to the Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, § 1101.  Declaration of David Arnold ("Arnold Decl."), ¶ 9.  The TSGP funds were part of the annual appropriation for the Government's fiscal year, which runs from October 1 through September 30.  *Id.* ¶¶ 8-9.  Any funds provided as part of the annual appropriation for FY 2025 must be obligated by October 1, 2025.  *Id.* ¶ 9.  Funds that are not obligated by the end of the fiscal year are deemed expired—they are not available for new obligations.  *Id.*

FEMA published the Notice of Funding Opportunity ("NOFO") regarding FY 2025 on August 1, 2025.  *Id.* ¶ 3.  The NOFO advised that:

> [a]n immigration term and condition, including those in the DHS Standard Terms and Conditions, may be material to the Department of Homeland Security's decision to make this grant award, and the Department of Homeland Security may take any remedy for noncompliance, including termination, if the state or territorial recipient or any local government subrecipient fails to comply with this term and condition.  No final agency decision has been made as of the date of this publication.

*Id.*  While the NOFO listed target allocations for each applicant, the targets served as estimates rather than final allocations; final allocations may be different in the award

letter, pending the final decision by Department of Homeland Security.  *Id*. ¶ 4.

Likewise, eligibility does not guarantee grant funding.  *Id*.

      The Secretary of Homeland Security approved the final allocations for TSGP funds for

FY 2025 on September 25, 2025.  *Id*. ¶ 5.  The Metropolitan Transportation Authority ("MTA")

did not receive funding because it is located in New York City, which is designated as a

Sanctuary Jurisdiction City.  *Id*.  Because of this, the target allocation estimated for the MTA

was distributed to other eligible recipients.  *Id*.  FEMA finalized the FY 2025 TSGP allocations

on September 26, 2025, and made grant awards to 20 transit agencies.  *Id*. ¶ 6.  FEMA notified

the recipients on the same day with a final award letter containing the grant amount and the final

terms and conditions.  *Id*. ¶ 7.  All of the grant funds were fully obligated at the time recipients

were notified; at that point, there were no funds available to make any additional grant awards.

*Id*.  Recipients were also notified that their awards were placed on hold until FEMA approves

the projects that are to be TSGP-funded.  *Id*. ¶ 11.  As such, FY 2025 funds have not been

disbursed at this time.  *Id*.

      On September 30, 2025, Plaintiff filed its Complaint alleging that FEMA's grant

determination was: 1) arbitrary and capricious and in excess of the agency's statutory authority

in violation 5 U.S.C. § 706(2)(A) and (C); 2) an *ultra vires* agency action; and 3) a violation of

the Constitution's Equal Sovereignty Clause.  ECF Nos. 1, 11.[1]  Plaintiff also filed the instant

motion for a preliminary injunction and temporary restraining order.  ECF No. 2.  After a hearing

on October 1, 2025, the Court entered a temporary restraining order enjoining the government

---

[1] Plaintiff states that the focus of its motion for injunctive relief is its claim that FEMA's funding determination was arbitrary and capricious pursuant U.S.C. § 706(2)(A).  ECF No. 12 at 2-3.  In any event, Plaintiff's remaining causes of action are also moot for the reasons stated herein.

from "[o]bligating, or [] [d]isbursing, processing, returning to the U.S. Treasury, or otherwise making unavailable to plaintiff by any means" $49,801,500 of the funds appropriated for the TSGP.  ECF No. 12.

## II.  LEGAL STANDARDS

"A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Mil. Acad. at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (*quoting Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC,* 555 U.S. 7, 20 (2008).  The last two factors of the analysis "merge when the Government is the opposing party*." Nken v. Holder*, 556 U.S. 418, 435 (2009).   The movant bears the burden of demonstrating "by a clear showing" that the remedy is necessary and that the prerequisites for issuance of the relief are satisfied.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

## ARGUMENT

## I.  PLAINTIFF'S  MOTION IS MOOT

As a threshold matter, the Court lacks subject matter jurisdiction to adjudicate this action because Plaintiff's claims are moot.  Pursuant to the APA, Plaintiff invites this Court to direct Defendants to de-obligate funds that have already been obligated to other jurisdictions, enjoin Defendants from moving those obligated funds, and suspend the statutory lapse of funds in the hopes of securing $33 million of already-obligated funds to which it believes it is entitled.

However, Plaintiff cannot obtain the relief it seeks. The State's claims are moot, as appropriations lapsed on September 30, 2025, and the funds it now asks this Court to de-obligate are no longer available.  Accordingly, this action does not present a live case or controversy that this Court has jurisdiction to adjudicate.

"Article III of the Constitution limits federal judicial Power, that is, federal-court jurisdiction, to Cases and Controversies." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395 (1980) (internal quotation marks omitted).  The "uncontroverted core" of Article III's case or controversy requirement is "the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001).  "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *City of Houston, Tex. v. Dep't of Hous. & Urb. Dev*., 24 F.3d 1421, 1426 (D.C. Cir. 1994).  "A case is 'moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020) *(*quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307, 132 S. Ct. 2277 (2012) (citation and quotation marks omitted); *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) ("Under Article III of the U.S. Constitution, [w]hen a case becomes moot, the federal courts lack subject matter jurisdiction over the action.") (internal quotation marks omitted).

Plaintiff's claims do not present a live case or controversy because the funds they seek are now unavailable.  Appropriated funds "can become unavailable in three circumstances: if the appropriation lapses; if the funds have already been awarded to other recipients; or if Congress rescinds the appropriation." *City of Houston*, 24 F.3d at 1426.  Here, Plaintiff finds itself in the

first two circumstances. TSGP funds lapsed on September 30, 2025, the end FY 2025, and the funds Plaintiff demands have already been obligated to other recipients. Arnold Decl., ¶¶ 6-8. As the DC Circuit instructed, "[i]ndeed, even if a plaintiff brings suit before an appropriation lapses, this circuit's case law unequivocally provides that *once the relevant funds have been obligated, a court cannot reach them in order to award relief*." *City of Houston*, 24 F.3d at 1426 (emphasis added). As the funds here have been fully obligated, this Court cannot reach them to award relief. *Id*.; *see also id*. at 1424 ("It is a well-settled matter of constitutional law" that where, as is the case here, "an appropriation has lapsed or has been fully obligated, federal courts cannot order the expenditure of funds that were covered by that appropriation.").

Similarly, the Second Circuit has indicated that it would follow the rule announced in *City of Houston* and hold that a claim is moot where, as here, the appropriation has lapsed and the grant funds have been awarded, but the funds have not yet been disbursed. *Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 142 (2d Cir. 2010) ("Under *City of Houston*, which we now follow, plaintiffs' claims are moot.").

*County of Suffolk* addressed a closely analogous situation. Plaintiffs in that case brought suit under the APA seeking additional funding from a grant program administered by the Department of Health and Human Services ("HHS"). At the time plaintiffs brought suit, HHS had not exhausted the relevant appropriations, but those funds were distributed while the suit was pending. *Cnty. of Suffolk,* 605 F.3d at 139, 142. In ruling on plaintiff's motion for a preliminary injunction, the Second Circuit held that the fact the "claims in *City of Houston* were moot at the time they were filed, [and] plaintiffs' claims became moot, despite their efforts, during the course of the litigation," were "distinctions without a difference for purposes of the mootness doctrine." *Id*. at 142. Critically, the Second Circuit emphasized that two events occurred in *City*

*of Houston* that rendered the plaintiffs' claims moot: "(1) HUD awarded the funds at issue to other grant recipients, *thereby exhausting the relevant FY 1986 appropriation*; and (2) the FY 1986 appropriation authorizing the grants expired and therefore lapsed." *Id*. at 141.  Those are the exact same two events that have occurred in this case.  Accordingly, this Court should follow *County of Suffolk* and hold that Plaintiff's claims are moot.  *Id*. at 142 ("Our analysis turns on the fact that . . . HHS had exhausted [the appropriations] by the time proceedings were remanded.").

Nor can Plaintiff evade this doctrine by seeking the same relief in another form, such as monetary damages or a monetary obligation under 31 U.S.C. § 1501(a)(6).  ECF No. 11 at 19. Where appropriated funds have lapsed and/or are exhausted, "'federal courts are without authority to provide monetary relief" because the Appropriations Clause prevents additional funds from being paid out of the Treasury" and ""awarding 'funds available from sources other than the [relevant] appropriation' would contravene the 'fundamental requirement' of § 702 of the APA that a plaintiff seek relief *'other than money damages*.'"  *Cnty. of Suffolk*, 605 F.3d at 142 (quoting *City of Houston*, 24 F.3d at 1428 (cleaned up)) (emphasis in original).

Thus, parties seeking to obtain funds after an appropriation has lapsed are jurisdictionally barred from doing so under the APA.  *Id.*  "Absent a waiver, sovereign immunity shields the federal government and its agencies from suit."  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Adeleke v. United States*, 355 F.3d 144, 150-51 (2d Cir. 2024) ("This may leave some aggrieved parties without relief, but that is inherent in the doctrine of sovereign immunity."). The APA constitutes a "limited waiver of sovereign immunity for claims against the United States 'seeking relief other than money damages' for persons 'adversely affected or aggrieved by agency action.'"  *New York v. Nat'l Sci. Found*., No. 25 CIV. 4452 (JPC), 2025 WL 2180478, at *7 (S.D.N.Y. Aug. 1, 2025) (quoting *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th

1099, 1105-06 (D.C. Cir. 2022)); *see also Westchester v. U.S. Dep't of Hous. and Urban Dev.*,
778 F.3d 412, 417 (2d Cir. 2015) (noting that "the APA's limited waiver of the federal
government's sovereign immunity permits only suits seeking relief other than money damages.")
(internal quotation marks omitted); *Manners v. U.S. Gov't Sec'y of Def.*, 242 F. App'x 723, 725
(2d Cir. 2007).  This limited waiver only waives the Government's sovereign immunity "to the
extent that plaintiff[] seek[s] to force [FEMA] to return property to [the State of New York]
where the *res* at issue is the funds appropriated by Congress for this grant program" for the fiscal
year 2025.  *Cnty. of Suffolk*, 605 F.3d at 141.  Here, the funds that have been appropriated have
already been otherwise obligated, meaning that funds are no longer available from the
appropriation for FY 2025.  As such, Plaintiff essentially seeks monetary damages that it cannot
obtain under the APA.

　　　　The fact that the TSGP funds at issue have been obligated but not yet disbursed does not
compel a different outcome, notwithstanding the holding in *Rodriguez v. Carson*, 401 F. Supp.
3d 465 (S.D.N.Y. 2019).  The plaintiffs in *Rodriguez* brought suit under the APA alleging that
the Department of Housing and Urban Development's ("HUD") interpretation of Section 8 of the
United States Housing Act of 1937 resulted in them paying more rent than the statute
contemplated.  *Id*. at 467.  In granting Plaintiffs' motion for a preliminary injunction, Judge
Furman concluded that in the context of a claim for reimbursement of rent monies due to the
government's failure to apply the proper formula, the holding in *County of Suffolk* extended only
to funds that have been disbursed.  *Id*. at 469-70.  However, Judge Furman recognized that in the
circumstances presented here, a different result would apply.  Specifically, Judge Furman wrote
that in *County of Suffolk*, the Second Court recognized that the two key events triggering
mootness in *City of Houston* were that "'(1) HUD awarded the funds at issue to other grant

8

recipients, thereby exhausting the relevant FY 1986 appropriation; and (2) the FY 1986 appropriation authorizing the grants expired and therefore lapsed.'" *Rodriguez*, 401 F. Supp. 3d at 469 (quoting *Cnty. of Suffolk*, 605 F.3d at 141).  Judge Furman further observed that the "Second Circuit explained that these two events precluded relief 'because the Appropriation Clause prevents additional funds '*from being paid out of the Treasury*.'" *Id*. (quoting *Cnty. of Suffolk*, 605 F.3d at 142) (emphasis in original).  While Judge Furman noted that "[n]either of those two 'independent grounds' . . . involved the mere *obligation* of appropriated funds, *Rodriguez*, 401 F. Supp. 3d at 469 (emphasis in original) – which was the case in *Rodriguez* – both of those independent grounds, however, are present here.  The TSGP funds have been awarded to other grant recipients, thereby exhausting the relevant FY 2025 appropriation, and (2) the FY 2025 appropriation authorizing the grants expired and therefore lapsed.  As such, Judge Furman's opinion supports a ruling that Plaintiff's claims are moot.  *Id*.

        In an attempt to salvage its claims, Plaintiff alleges that "both statute and equity provide this Court with general authority to prevent the lapse of otherwise-expiring funds that are subject to litigation."  ECF No. 2 at 12.  Plaintiff cites to 31 U.S.C. § 1502(b) to support its claim, but the State's reliance on this provision is misplaced.  Section 1502(b) provides that "[a] provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance."  Section 1502(b) thus is inapplicable here because, as of September 30, 2025, the date that the funding at issue lapsed, all of the TSGP funds were fully obligated and there was no "balance" to be returned to the general fund.  Arnold Decl. ¶ 7.  Plaintiff also overstates the Court's equitable authority to undo a lapse in funds.  While the DC Circuit has recognized an equitable doctrine that allows courts to award

9

funds after an appropriation has lapsed, the equitable exception is "narrow," only applies "'to take action to preserve the status quo,'" and does not apply where "'budget authority has lapsed before suit is brought.'"  *City of Houston*, 24 F.3d at 1426 (quoting *Nat's Ass'n of Regional Councils v. Costle*, 564 F.2d 583, 588-89 (D.C. Cir. 1977); *see also City of Houston*, 24 F.3d at 1426 (rejecting application of equitable exception "even if a plaintiff brings suit before an appropriation lapses").

## II.    PLAINTIFF'S MOTION FAILS ON THE MERITS

### A.    *Plaintiff Cannot Show a Likelihood of Success on the Merits*

To satisfy the "success on the merits" factor, the moving party must show that his chance of success on the merits is more than a "mere possibility."  *DiMartile v. Hochul*, 80 F.4[th] 443, 456 (2d Cir. 2023).  To establish a likelihood of success on the merits, "the movant must establish that the case is not likely to be moot . . . because mootness divests a federal court of jurisdiction to adjudicate the merits of a claim . . . and hence would negate the litigant's chance of success on that claim."  *Granite State Outdoor Advert., Inc. v. Town of Orange, Connecticut*, 303 F.3d 450, 451 (2d Cir. 2002).  Here, Plaintiff cannot succeed on the merits of its claims because, for the reasons detailed above, its claims are moot.

Even if Plaintiff's claims were not moot and this Court were to reach the merits of this motion, Plaintiff could not demonstrate a likelihood of success on the merits of its APA claim because Plaintiff cannot prove that the agency's decision here was arbitrary and capricious. Under the APA, courts reviewing agency action shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The scope of review under this standard is "'narrow,' and courts should not substitute their judgment for that of the agency."

10

*Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S. Ct. 2856 (1983)); *see also State v. Bessent*, 149 F.4th 127, 152 (2d Cir. 2025) (the court's "review of agency action under the arbitrary and capricious standard of review is narrow and particularly deferential") (internal quotation marks omitted).  The standard "deems the agency action presumptively valid provided the action meets a minimum rationality standard." *Sierra Club v. EPA*, 353 F.3d 976, 978 (D.C. Cir. 2004) (citation omitted).  Courts can "uphold a decision of less-than-ideal clarity if the agency's path may reasonably be discerned."  *Kakar v. United States Citizenship & Immigr. Servs*., 29 F.4th 129, 132 (2d Cir. 2022) (internal quotation marks omitted).

FEMA made clear in its NOFO that compliance with federal immigration laws would be one possible consideration in awarding grants:  ""[a]n immigration term and condition, including those in the DHS Standard Terms and Conditions, may be material to the Department of Homeland Security's decision to make this grant award" and that DHS "may take any remedy for noncompliance, including termination, if the state or territorial recipient or any local government subrecipient fails to comply with this term and condition."  Arnold Decl. ¶ 3. DHS's requirement that states receiving funding comply with federal immigration law—which DHS is tasked with enforcing—is neither arbitrary nor capricious.  Ensuring the that recipients enforce federal immigration laws and policies is a rational reason in support of the agency's denial of federal funds.  *See State v. Dep't of Just*., 951 F.3d 84, 114 (2d Cir. 2020) ("While Congress cannot regulate the States, its constitutional powers, notably under the Spending Clause, *see* U.S. Const. art. I, § 8, cl. 1, do allow it to "'fix the terms on which it shall disburse federal money to the States[.]'") (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. at 1, 17, 101 S. Ct. 1531, 1540 (1981)).

11

B.  *Plaintiff Does Not Face Irreparable Harm*

Plaintiff cannot plausibly allege that FEMA's decision to award grants to other eligible recipients would result in irreparable harm.  The State alleges that if the current TSGP obligations stand, the funds will be "irretrievably lost," resulting in irreparable harm.  ECF No. 2 at 12.  Establishing irreparable harm is "'the single most important prerequisite for the issuance of a preliminary injunction.'"  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir.1999)). "To satisfy the irreparable harm requirement, [a plaintiff] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent[.]"  *Int'l Bus. Machines Corp. v. De Freitas Lima*, No. 7:20-CV-04573 (PMH), 2020 WL 5261336, at *14 (S.D.N.Y. Sept. 3, 2020), *aff'd sub nom. Int'l Bus. Machines Corp. v. Lima*, 833 F. App'x 911 (2d Cir. 2021) (internal quotation marks and citation omitted).   Plaintiff's claims center on federal funds to which it was never entitled—the target allocation for funding was an estimate rather than any final allocation or guarantee of funding.  The State cannot establish that it suffers irreparable harm by not receiving funds it was never granted in the first place.

C.  *The Balance of Equities and the Public Interest Favors the Government*

Plaintiff has not shown that the balances of equities and public interest favor a preliminary injunction.   DHS seeks to ensure that states receiving TSGP funding comply with the federal immigration laws and policies it is directly responsible for enforcing.  An injunction would essentially prevent the agency from pursuing one of the Government's policy priorities. "[A]ny time [the Government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."  *Trump v. CASA, Inc.*, 606 U.S. 831, 861, 145 S. Ct. 2540, 2562 (2025) (internal quotation marks and citation omitted).  In

light of the harm DHS would face if it was prevented from ensuring compliance with federal laws, the balance of equities and public interest tip in favor of the Government.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for injunctive relief.

Dated: New York, New York
        October 6, 2025

                                        Respectfully submitted,

                                        JAY CLAYTON
                                        United States Attorney
                                        Southern District of New York
                                        *Attorney for Defendants*

                        By:     /s/ *Jeffrey Oestericher*
                                        JEFFREY OESTERICHER
                                        Assistant United States Attorney
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel.: 212-637-2695
                                        Email: jeffrey.oestericher@usdoj.gov

### Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,984 words.