# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK,

               *Plaintiff*,

   v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland
Security; UNITED STATES DEPARTMENT
OF HOMELAND SECURITY; DAVID
RICHARDSON, in his official capacity as
Senior Official Performing the Duties of the
Administrator of the Federal Emergency
Management Agency; FEDERAL
EMERGENCY MANAGEMENT AGENCY,

               *Defendants.*

No. 25-cv-8106 (LAK)

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.............................................................................................ii

INTRODUCTION .......................................................................................................... 1

ARGUMENT ................................................................................................................. 1

I.       This Court Has Jurisdiction Over Plaintiff's Claims ........................................ 1

II.      Plaintiff Satisfies the Remaining Conditions for a Preliminary Injunction ....... 5

         A.      The Reallocation Decision Violates the APA........................................... 5

         B.      Preliminary Relief Is Necessary to Avert Irreparable Harm to New York's
                 Counterterrorism Programs...................................................................... 6

         C.      The Balance of Equities and the Public Interest Clearly Favor Plaintiff.............. 7

CONCLUSION............................................................................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ambach v. Bell,*
    686 F.2d 974 (D.C. Cir. 1982)......................................................................................4

*County of Suffolk, New York v. Sebelius,*
    605 F.3d 135 (2d Cir. 2010).............................................................................. 2, 4-5

*DHS v. Regents of the Univ. of Cal.,*
    591 U.S. 1 (2020)..........................................................................................................6

*Illinois v. Noem,*
    No. 1:25-cv-00495 (D.R.I.)..........................................................................................2

*League of Women Voters of United States v. Newby,*
    838 F.3d 1 (D.C. Cir. 2016).........................................................................................7

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983).......................................................................................................6

*Population Institute v. McPherson,*
    797 F.2d 1062 (D.C. Cir. 1986)...............................................................................1, 3

*Rodriguez v. Carson,*
    401 F. Supp. 3d 465 (S.D.N.Y. 2019).................................................................... 3-4

*Winter v. NRDC,*
    555 U.S. 7 (2008).........................................................................................................5

**Federal Statutes**

5 U.S.C.
    § 702...........................................................................................................................5
    § 706...........................................................................................................................5

6 U.S.C.
    § 1135........................................................................................................................7

31 U.S.C.
    § 1502........................................................................................................................2

Pub. L. No. 119-4..................................................................................................................1, 7

**State Statutes**

N.Y. Pub. Auth. Law
    §§ 1263-1264 ..............................................................................................................6

## INTRODUCTION

Without warning, and contrary to Congress's express direction, Defendants sought to zero out approximately $34 million in grant awards dedicated to counterterrorism efforts that Plaintiff expected to receive under the Transit Security Grant Program ("TSGP"). Defendants' primary argument in response to Plaintiff's challenge to this action is that Plaintiff can have no remedy due to the conclusion of the federal fiscal year on October 1. As the Court already concluded at the Temporary Restraining Order ("TRO") hearing and *as the President himself has made clear*—this is incorrect. Because the funds have not been dispersed, this Court can still remediate Plaintiff's injuries.

Given how straightforward the issues are here, Plaintiff agrees with the Court that consolidating resolution on the merits with the preliminary injunction hearing pursuant to Rule 65(a)(2) is appropriate in this case. Tr. at 20:10-17. Defendants' declaration submitted in support of their opposition, ECF No. 24, demonstrates that there are no outstanding issues of fact, but only the legal issues concerning jurisdiction and Plaintiff's entitlement to relief. Plaintiff respectfully requests that the Court grant a preliminary injunction or, alternatively, enter judgment in Plaintiff's favor, ordering Defendants to take such steps as are necessary to award to Plaintiff the full $33,898,500 in TSGP funds that Defendants originally targeted for Plaintiff from the fiscal year 2025 appropriations in Pub. L. No. 119-4. Should the Court grant a preliminary injunction, Plaintiff respectfully requests that the Court set an expedited schedule for summary judgment briefing.

## ARGUMENT

### I.    This Court Has Jurisdiction Over Plaintiff's Claims

Plaintiff has successfully taken the steps necessary to preserve this Court's jurisdiction over the TSGP funds at issue by (1) filing this lawsuit on September 30, 2025, before the end of the federal fiscal year, thus availing itself of the equitable doctrine articulated in *Population Institute*

1

*v. McPherson*, 797 F.2d 1062 (D.C. Cir. 1986) and its progeny as well as the statutory jurisdiction authorized by 31 U.S.C. § 1502(b); and (2) by obtaining a TRO from this Court before Defendants distributed the TSGP funds, thus preserving the Court's authority to order relief with respect to those funds, as required by *County of Suffolk*, *New York v. Sebelius*, 605 F.3d 135 (2d Cir. 2010). Defendants' arguments to the contrary are misplaced, as the Court has already concluded.

As an initial matter, Defendants' brief and declarant are at odds with the position that has been publicly taken by President Trump and, apparently, senior FEMA leadership. Defendants' Declarant, Mr. David Arnold, asserts that because the TSGP appropriation for federal fiscal year 2025 expired on October 1, FEMA no longer has authority to reallocate funds to New York. *See* Declaration of David Arnold dated October 6, 2025, at ¶ 10 (ECF No. 24) ("Arnold Decl."), But on October 3, on Truth Social, the President announced that he had reversed cuts to the Homeland Security Grant Program ("HSGP") that are at issue in *Illinois v. Noem*, No. 1:25-cv-00495 (D.R.I.). President Donald Trump (@realDonaldTrump), Truth Social (Oct. 3, 2025 12:42 PM), https://truthsocial.com/@realDonaldTrump/posts/115311232842528048.



The appropriation for HSGP also expired at the end of the federal fiscal year after New York's (and other plaintiffs') funds were re-obligated (but not distributed) to other awardees. Clearly, the

administration does *not* believe that it is incapable of reallocating funds to New York after the close of the federal fiscal year where the money has not been disbursed. *See* Susan Haigh & Gabriela Aoun Angueira, *Trump Reverses $187M Funding Cuts for New York Counterterrorism after Bipartisan Outcry*, Associated Press (Oct. 3, 2025), https://apnews.com/article/trump-new-york-counterterrorism-funding-hochul-fb98d85cb66e555b8114af10e57d3663.

As the Court concluded on the record at the hearing on Plaintiff's motion for a TRO, Tr. at 18:25-19:11, and as argued herein and in Plaintiff's opening brief, the critical question at this juncture is not whether the money has been *obligated*, but whether it has yet been *disbursed*. The answer, from every court in this or the D.C. Circuit that has directly addressed this specific issue, is the latter. And since Mr. Arnold confirms that "no FY 2025 funds have been disbursed" to date, Arnold Decl. ¶ 11, this Court continues to have jurisdiction over the affected funds.

In *Population Institute v. McPherson*, the D.C. Circuit held that a preliminary injunction was necessary to prevent mootness that would occur if the agency was permitted to disburse otherwise obligated funds: "Although the government [had] *obligated* [the] funds to other organizations … no money [had] been *disbursed*. … [I]f the government in the instant case [was] permitted to *distribute* the [funds] to other organizations, the appeal [would have] become moot." 797 F.2d 1062, 1081 (D.C. Cir. 1986) (emphases in original).

This Court reached the same conclusion in *Rodriguez v. Carson*, 401 F. Supp. 3d 465 (S.D.N.Y. 2019). There, Judge Furman held that

> there is a crucial difference between obligated and disbursed funds as far as the Appropriations Clause is concerned. … The fact that [an agency] may have incurred liabilities in a legal or accounting sense of the term may have significant consequences, … but those consequences do not implicate the Appropriations Clause. … Put differently, funds that remain in the Government's possession are not 'unavailable' as a source of specific relief as far as the

3

>           Appropriations Clause and [*County of Suffolk*, *NY v. Sebelius*, 605
>           F.3d 135 (2d Cir. 2010),] are concerned.

*Id.* at 470 (cleaned up).

    *City of Houston v. Department of Housing and Urban Development* is not to the contrary.

24 F.3d 1421 (D.C. Cir. 1994). Defendants cite to *City of Houston* for the proposition that "once

the relevant funds have been obligated, a court cannot reach them in order to award relief."

Defendants' Memorandum of Law in Opposition dated October 6, 2025, at 6 (ECF No. 25)

("Opp.") (quoting 24 F.3d at 1426). But Defendants fail to put that quotation in the appropriate

context. In that same paragraph, the court goes on to quote favorably from *Population Institute* as

well as *Ambach v. Bell*, 686 F.2d 974, 986 (D.C. Cir. 1982), both of which draw the distinction

between *obligation* and *disbursement* for which Plaintiff argues. *City of Houston*, 24 F.3d at 1426-

27.

    Indeed, the court in *City of Houston* ultimately held that, "[t]o avoid having its case mooted,

a plaintiff must both file its suit before the relevant appropriation lapses and seek a preliminary

injunction preventing the agency from *disbursing* those funds." *Id.* at 1427 (emphasis added); *see

also Rodriguez*, 401 F. Supp. 3d at 468 n.1 (noting the *City of Houston* court's citation to

*Population Institute*).

    The same is true for the Second Circuit's decision in *County of Suffolk*. There, and unlike

here, the relevant agency "had exhausted [the funds]" between the time that the plaintiff counties

unsuccessfully appealed from a denial of a preliminary injunction and the remand from that appeal.

605 F.3d at 142; *see also Rodriguez*, 401 F. Supp. 3d at 469 ("*County of Suffolk* does not, by its

terms, extend to funds that have been obligated but not yet disbursed."). While the plaintiffs in

*County of Suffolk* "attempt[ed], but ultimately fail[ed]" to obtain the preliminary injunction that

would have prevented their claim from being mooted, 605 F.3d at 142, Plaintiff here has satisfied the two prongs articulated in *County of Suffolk* for preserving this Court's jurisdiction.

Because Plaintiff filed before the end of the federal fiscal year, and because this Court restrained Defendants before they could distribute the TSGP funds, this matter is not moot and the Court has the authority to award Plaintiff the appropriate injunctive relief it seeks.[1]

## II.    Plaintiff Satisfies the Remaining Conditions for a Preliminary Injunction

Defendants devote only three pages of their brief to the merits of this action and the other factors for a preliminary injunction. For the same reasons the Court articulated at the TRO hearing, Plaintiff has demonstrated that it is likely to succeed on the merits of its APA § 706(2)(A) claim; will suffer an irreparable injury absent the requested relief; and has shown that both the public interest and the balance of the equities tip in its favor. Tr. at 18; *see also Winter v. NRDC*, 555 U.S. 7, 20 (2008) (articulating the standard for awarding a preliminary injunction).

### A.    The Reallocation Decision Violates the APA

As this Court has already held, Plaintiff is likely to succeed on the merits of its 5 U.S.C. § 706(2)(A) claims because "the reason [the TSGP] money was cut off was because of a determination on the part of this administration that New York should be punished for exercising its responsibilities in a way that does not satisfy the administration's wishes with respect to what it calls 'the largest deportation program in history.'" Tr. at 18:7-12. That punishment directly contravenes Congress's direction that Defendants award TSGP funds to applicants "'solely' on the basis of the risk of terrorist attacks." *Id.* at 16:2-7 (quoting 6 U.S.C. § 1135(c)).

---

[1] Defendants argue that Plaintiff also has no recourse to money damages, Opp. at 7, but Plaintiff has made no argument for money damages here and instead seeks only relief to "the *res* at issue" made available by the waiver of sovereign immunity in 5 U.S.C. § 702, which in this case are the specific fiscal year 2025 funds appropriated for the TSGP. *County of Suffolk*, 605 F.3d at 140-41.

Defendants' only response is that "FEMA made clear in its [Notice of Funding Opportunity ("NOFO") for the TSGP] that compliance with federal immigration laws would be one possible consideration in awarding grants." Opp. at 11. But this explanation fails for all the reasons articulated in Plaintiff's opening brief, and specifically because (1) Defendants never articulated the immigration law compliance condition as the reason for the zeroing out of Plaintiff's TSGP award, thus rendering any reliance on that reason an unlawful post-hoc rationalization, *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020); and (2) compliance with civil immigration enforcement is not a factor that Congress authorized Defendants to consider when awarding TSGP funds. *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Defendants also make an off-hand assertion that Plaintiff cannot receive relief because MTA is located in New York City, Opp. at 3, but this appears to be based on a misapprehension. MTA is an instrumentality of the State, not the City. *See, e.g.*, N.Y. Pub. Auth. Law §§ 1263-1264.

For these reasons, and those articulated in Plaintiff's opening brief, ECF No. 2 at 7-11, Plaintiff is likely to succeed on the merits of its claim that Defendants violated the APA.

**B.    Preliminary Relief Is Necessary to Avert Irreparable Harm to New York's Counterterrorism Programs**

Defendants do not in any way contest Plaintiff's showing that, absent relief, it will suffer significant harm to numerous critical public safety programs funded by the TSGP, including those aimed at weapons of mass destruction detection technologies. ECF No. 3-4 ¶ 16; *see also* Tr. at 17:19-23 ("The state says, and there appears to be no denying it, that it will be deprived of almost $34 million that would have been used to protect New Yorkers and that it will be forced significantly to reduce its police presence and its counterterrorism activities."). Defendants' only counter is that, according to them, Plaintiff is not "entitled" to the funding. Opp. at 12. But this is

simply a restatement of their barebones merits argument—if the Court agrees with Plaintiff that it *is* entitled to a Notice of Award from Defendants for the full amount of the TSGP funding targeted for Plaintiff in the NOFO, then the irretrievable loss of that funding should Defendants be permitted to disburse it to other grantees would result in an irreparable injury.

C.      **The Balance of Equities and the Public Interest Clearly Favor Plaintiff**

Defendants argue that the equities and public interest favor them because an injunction will "prevent[] [Defendants] from ensuring compliance with federal laws." Opp. at 13. To the contrary, an injunction here is necessary to ensure Defendants' compliance with federal laws, and specifically with Congress's direction that Defendants award TSGP funds solely according to the risk of terrorism faced by applicants. 6 U.S.C. § 1135(c); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.") (internal quotation marks omitted).

## CONCLUSION

Plaintiff respectfully requests that the Court grant a preliminary injunction preventing Defendants from disbursing the TSGP funds targeted for Plaintiff or, alternatively, enter judgment in Plaintiff's favor, ordering Defendants to take such steps as are necessary to award to Plaintiff the full $33,898,500 in TSGP funds that Defendants originally targeted for Plaintiff from the fiscal year 2025 appropriations in Pub. L. No. 119-4.

DATED: October 8, 2025                    Respectfully submitted,
      New York, NY


LETITIA JAMES
  ATTORNEY GENERAL OF NEW YORK


*/s/ Stephen Thompson*
Rabia Muqaddam
  *Chief Counsel for Federal Initiatives*
Stephen C. Thompson
  *Special Counsel*
Julie Dona
  *Special Counsel*
Victoria Ochoa
  *Assistant Attorney General*
28 Liberty Street
New York, NY 10005
(212) 416-6183
Stephen.Thompson@ag.ny.gov

*Attorneys for the State of New York*


## Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitations of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 2,121 words.